UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PEREZ-FLORES,<br><br>    Petitioner,<br><br>    v.<br><br>MICHAEL BENOV, WARDEN<br><br>    Respondent. | Case No.: 1:13-cv-01469 JLT (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br> (Doc. 1)<br><br>NO CERTIFICATE OF APPEALABILITY REQUIRED |

    Armando Perez-Flores challenges the results of a prison disciplinary hearing at which he was found to have stolen food from the prison kitchen. As a result of the disciplinary action, Petitioner was assessed 27 days lost credit and six months lost commissary privileges. In this action, Perez-Flores argues that the discipline imposed must be reversed and the credits restored because the hearing officer at the prison was not an employee of the Bureau of Prisons.

    The Court finds that, though the DHO was not an employee of the BOP, the discipline was imposed by a staff member of the BOP who conducted de novo review of the disciplinary action and determined that punishment was warranted. Thus, the petition for writ of habeas corpus is **DENIED**.

**I.**    **Factual Background**

    Petitioner is housed at Taft Correctional Institution, a government owned but privately-run prison contracted with the Bureau of Prisons. (Doc. 9 at 30) On February 9, 2013, correctional staff searched Petitioner's locker and found 20 chicken patties in a laundry bag. (Doc. 11-1 at 19)

Petitioner admitted that the chicken patties belonged to him. Id. The correctional officer noted that inmates cannot buy chicken patties from the commissary and are not permitted to remove them from the "chow hall." Id.

The matter was referred to the Unit Disciplinary Committee for its consideration. (Doc. 11-1 at 19, 20) Petitioner reported to the UDC that the chicken patties had been given to him by another inmate and denied he had stolen them. Id. at 19, 20. The UDC referred the matter to the Disciplinary Hearing Officer for hearing because it determined that the sanctions that should be due if the charge was found to be true, exceeded that which the UDC could impose. Id. at 19.

Petitioner's disciplinary hearing was held on April 5, 2013. (Doc. 11-1 at 22) The hearing officer was Curtis Logan who was an employee of TCI, not an employee of the BOP. (Doc. 11-1 at 24; Doc. 1 at 6; See Doc 11 at 4-5.) Though Petitioner was advised of his rights to have a staff representative and to call witnesses, he declined both. Id. at 22, 23. In addition, Petitioner chose not to testify or make a statement. Id. Thus, Logan considered the incident and investigation report and the photographs taken of the chicken patties and where they were found. Id. at 23.

In considering the evidence, Logan noted that the chicken patties were discovered in Petitioner's locker and that he admitted to the officer who discovered them that the food belonged to him. Id. at 23. Logan noted further that Petitioner could not have purchased the patties because they were not sold at the commissary and that the food was not permitted to be removed from the chow hall. Id. Logan reviewed the photos showing the chicken patties found inside Petitioner's locker. Id. Logan noted also that there was no explanation given by Petitioner for the presence of the food items in Petitioner's locker. Id. Thus, Logan found that Petitioner had stolen the chicken patties from the kitchen. Id. Logan told Petitioner that his determination would be reviewed by the BOP and the recommended loss of 27 days of good conduct credit "may change after review by the BOP." Id. at 24.

Logan forwarded a copy of his report to the Privatization Management Branch, DHO Oversight Specialist, Daniel McCarthy, who reviewed the disciplinary action and found that Logan's recommendation and imposed the punishment which included the loss of 27 days of good conduct credit. (Doc. 11-1 at 31)

Petitioner appealed the determination. (Doc. 11-1 at 33) Petitioner argued that the punishment should be rescinded because Logan was "not a 'federal employee of the BOP.'" Id. Specifically, Petitioner sought the good conduct credit be restored to him. Id. Petitioner's appeal was considered by the Administrator of the Privatization Management Branch. Id. at 34. Petitioner's appeal was rejected for several reasons. First, the Administrator noted that Petitioner was subject to the same rules and procedures as every other inmate in the BOP custody regardless of whether he is held at a government-owned or private facility. Id. Second, the Administrator noted that Logan was "trained and certified by the Bureau." Id. Finally, the Administrator noted that "the Bureau retains full decision-making authority and reviews and certifies **all** GCT sanctions (disallowance and/or forfeiture of GCT0 **prior to** any adjustments to the inmate's sentence computation. Based on this information, contractor DHO's have the authority to disallow and/or forfeit GCT once the BOP staff certifies the sanctions." Id.

Once again, Petitioner appealed and reiterated his arguments though this time, he cited expressly to the case of Arredondo–Virula v. Adler, 510 Fed. Appx. 581, 582 (9th Cir.2013). In doing so, he noted that in Arredondo, the Ninth Circuit reversed the Logan's disciplinary decision after finding that the authority to impose discipline was reserved to BOP staff. (Doc. 11-1 at 36) This appeal was denied also. (Doc. 37-38) The Administrator of National Inmate Appeals adopted the rationale of the Administrator of the Privatization Management Branch and held further that the rationale of Arredondo did not apply because it was based upon a regulation that "was no longer in force" and because the facts of Petitioner's case were distinguishable. Id. at 38.

In the current action, Petitioner persists in his previous argument that Logan lacked the authority to impose discipline on him and seeks a restoration of his good credit time.

## II. **Jurisdiction**

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution based upon the outcome of a prison disciplinary proceeding. If a constitutional violation has resulted in the loss of credits, it affects the duration of a sentence and may be remedied

1  by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876–78 (9th Cir. 1990).
2  Thus, this Court has subject matter jurisdiction. Moreover, at the time the petition was filed Petitioner
3  was in custody at the Taft Correctional Institute, located in Taft, California, which is located within
4  the jurisdiction of this Court. Therefore, this Court is the proper venue. See 28 U.S.C. § 2241(d).

### III. Standard of Review

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir.1996) (quoting Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir.1991)). Though not afforded the full panoply of rights, due process requires the prisoner receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985); Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). Indeed, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 455 (citations omitted). The Constitution does not require that the evidence presented preclude any conclusion other than that reached by the disciplinary board; rather, there need only be some evidence in order to ensure that there was some basis in fact for the decision. Id. at 457.

### III. Analysis

#### A. Background

The BOP's authority is described in 18 U.S.C. § 4042(a), which places upon the agency the responsibility for the "management and regulation of all Federal penal and correctional institutions" and the "discipline of all persons charged with or convicted of offenses against the United States." Notably, imposition of inmate discipline, whether housed at a government-owned facility or a private facility contracted with the BOP, is permitted by BOP "staff." 28 C.F.R. § 541.1; 28 C.F.R. § 541.2. "Staff" is defined in the regulations to include "any employee of the Bureau of Prisons or Federal Prison Industries, Inc." (28 C.F.R. § 500.1(b))  Notably, the regulations fail to provide any guidance as

4

to how discipline may be imposed on such an inmate given the fact that employees of a private corporation, by definition, are not "staff" of the BOP.

To bridge this gap, the BOP issued a memorandum titled, "Inmate Discipline Procedures at Privately Operated Facilities." (Doc. 11-1 at 26-29)  The memorandum set forth that the privately employed DHO "will send all DHO decisions regarding the disallowance or forfeiture of [good conduct time], along with the recommended sanction, to the PMB DHO.  The PMB DHO will review the entire discipline file and make an independent decision regarding the contractor's recommendation.  The PMB DHO will ensure due process requirements have been met and recommended sanctions are in accordance with [guidelines set forth elsewhere].  If the PMB DHO agrees with the contractor's recommendations, the DHO report will be certified and returned to the contractor.  If the PMB DHO disagrees with the recommendations, the contractor will be notified." Id. at 26-27.  Later, the BOP issued "Technical Direction" which clarified, "PMB Staff in the Central Office will serve as the BOP's DHO for the purpose of reviewing and certifying actions for Taft . . . [Good conduct time] will not be taken without BOP certification." Id. at 28.  The Technical Direction set forth more detailed information about how the recommendation of the contractor DHO would be reviewed by the BOP, though the basic procedure remained unchanged. Id.

The Court notes that peppered throughout the Regulations related to discipline of federal inmates, the word "staff" is used.[1]  For example, 28 C.F.R. § 541.5 determines that "staff" must witness or reasonably believe an offense had occurred before an inmate may be charged with a disciplinary violation.   Likewise, "staff" must issue the incident report to the inmate and only "staff" is authorized to investigate whether an offense has occurred.  Id.  Section 541.8(d) determines that

---

[1] As in Torres-Ramirez v. Benov, 2013 WL 6798948, at *7 (E.D. Cal. Dec. 20, 2013), the Court agrees—though it would be unwieldy and likely ineffective in providing timely response to inmate misbehavior—the regulations allow an employee of TCI to witness the prohibited act and report it to a staff member of the BOP who could issue the incident report without being present at the facility. However, Torres ignores the other regulations which restrict certain acts to "staff." Id. For example, Torres makes no attempt to explain how an investigation of what occurred can be managed remotely, how a person may act as the inmate's staff representative at the hearing—which can include preparing evidence for the hearing, obtaining witness statements, providing written questions to be posed to the witnesses—from a remote location, or how the UDC could proceed effectively from afar.  While rejecting the respondent's argument that "staff" should be taken to mean BOP employees when the inmate is housed at a BOP facility and employees of the private facility when the inmate is housed there, Torres found this to be an irrational interpretation without addressing why the Court's interpretation constitutes a more reasoned view.

only "staff" may act as a representative for the inmate at the hearing and only "staff" may sit on the Unit Discipline Committee. Of all of these roles, the only person involved in the process who is not required to be "staff," is the DHO. 28 C.F.R. § 541.8(b). The regulations require only that the DHO be "an impartial decision maker[2] who was not a victim, witness, investigator, or otherwise significantly involved in the incident." Id.

Notably, in Arredondo–Virula v. Adler, 510 Fed. Appx. 581, 582 (9th Cir.2013), cited by Petitioner, the Ninth Circuit considered the significance of the word "staff" as it was used in an earlier version of BOP regulations related to whom may impose discipline on an inmate. The Court did not consider whether the DHO must be an employee of the BOP. Instead, the Court held that only those employed by the BOP may impose discipline and, because it was undisputed that Logan imposed the discipline on Arredondo-Virula and was not an employee of the BOP, the Court reversed the imposition of the discipline.

In the current situation, the hearing officer was the same person, Curtis Logan, as in Arredondo. Moreover, indisputably, TCI remains a private prison contracted with the BOP to house federal inmates. In addition, Respondent concedes, impliedly, Logan continued as an employee of the private prison and not as an employee of the BOP. (Doc. 11 at 5-6) Nevertheless, different from factual situation of Arredondo, here, Logan did not impose the discipline but merely recommended it to the PMB DHO. Id. at 7. Indisputably, the PMB DHO was an employee of the BOP and he conducted a de novo review of the disciplinary file and determined Petitioner was guilty of the offense. Id. In doing so, the PMB DHO adopted the recommended punishment set forth by Logan and directed it be imposed. Id.

Notably, the Court is obligated to accept the agency's interpretation of its own rules except where it is plainly erroneous or inconsistent with the regulations or it fails to "'reflect the agency's fair and considered judgment on the matter in question.'" Talk Am., Inc. v. Michigan Bell Tel. Co., 131 S. Ct. 2254, 2261 (2011) quoting Auer v. Robbins, 519 U.S. 452, 461, 462 (1997). First, the Court concludes that the BOP's interpretation of the regulations—allowing a non-BOP employee to act as

---

[2] Though Petitioner noted in his appeals that Logan works for "a private for profit company," he offered no argument that this impacted Logan's impartiality. Likewise, here, he does not claim that Logan was partial.

the hearing officer at the facility—is not plainly erroneous. As noted above, 28 C.F.R. § 541.8(b) does not require that the hearing officer be a staff member of the BOP. Moreover, the mere fact that the hearing officer is employed by TCI does not demonstrate that the hearing officer is partial any more than a BOP staff member hearing officer at a government-owned facility must be inherently partial.

Second, providing a process of review by a BOP staff member who is vested with the authority to reconsider the entirety of the process de novo and determine whether discipline should be imposed, does not deviate from the authority outlined in the regulations. It is apparent the regulations anticipate that the hearing officer actually present at the hearing may impose sanctions for the wrongful conduct. See "Inmate Discipline Rules: Subpart Revision and Clarification, 70 FR 43093-01." However, the there is no requirement that the hearing officer present at the live hearing *must* impose the discipline. Indeed, if only DHOs were entitled to impose sanctions on inmates then, clearly, this would conflict with 28 CFR § 541.1 which allows imposition of by "Bureau staff" and does not restrict this authority only to BOP disciplinary hearing officers.[3]

Likewise, while the regulations permit the DHO to sanction the inmate, they do not require that he do so. Indeed, the regulations seem to anticipate the situation found here where the hearing officer *may* impose sanctions if he is an employee of the BOP but may not do so if he is not an employee of the BOP and must, instead, defer this decision to the BOP.[4] In this way the regulations may be harmonized.[5]

Finally, there is no showing that the BOP's interpretation of the regulations, as set forth in the Memorandum and Technical Direction documents is anything other than the agency's fair and considered judgment on the topic. (Doc. 11-1 at 26-29) Indeed, the practice of referring the decision of the TCI hearing officer to the PMB DHO for purposes of de novo review has existed since these

---

[3] This section reads in relevant part, "This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, **by allowing Bureau staff to impose sanctions on inmates** who commit prohibited acts." 18 CFR § 541.1, emphasis added.

[4] The Court agrees with the apparent suggestion that the person acting as the hearing officer at the live hearing is well-situated to determine whether the prohibited act occurred. However, as here, where there was no live testimony offered and no live statements made, the implied rationale that *only* this person can make this determination is faulty. In any event, whether this person is the *only* person capable and competent to *impose* the sanction is an entirely different question.

[5] Another method would be to determine that "staff" means "institutional staff" when the inmate is housed at a private facility. However, because this argument is not proffered by either side, the Court declines to consider this.

7

1  documents were issued in mid-2007 and they were issued only after study of the "Bureau's inmate
2  discipline process at privately operated facilities." Id. at 26.  Thus, the regulatory interpretation set
3  forth in these documents was not developed in response to this litigation nor is there any showing of a
4  post hoc rationalization of the BOP's current actions. In sum, therefore, the Commission's
5  interpretation of its regulations is neither plainly erroneous nor inconsistent with the regulatory text.[6]

### B. The disciplinary determination was supported by some evidence

In considering the petition, the Court is not entitled to substitute its judgment for that of the prison officials but, instead, merely to determine whether "some evidence" exists to support the determination.  Hill, 472 U.S.at 455-56 ["Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.']  This Court is required to defer to the prison officials who made the disciplinary decision because these proceedings "take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." Id. at 456.  Thus, the Court is not entitled to determine whether there are other factual scenarios which could show the prison officials acted improperly when they issued the discipline.  Instead, the Court is required to determine whether is some evidence in the record which supports the finding the prison officials made.  The Court concludes there is.

As described above, there was evidence that the food items were found in Petitioner's possession and that he admitted they were his.  In addition, there was evidence presented that Petitioner could not have come to be in possession of the chicken patties except through theft.  Thus, the Court concludes that because the BOP had "some basis in fact" (Hill at 456) upon which the discipline decision was based, the outcome of disciplinary hearing must be upheld and Petitioner is not entitled to habeas relief.

---

[6] The Court does not mean to suggest that other interpretations may not make more sense or would not be more effective in meeting the goals of the regulations.  However, the Court is not entitled to substitute its judgment for that of the BOP and, instead, the Court's role is limited to upholding the BOP's interpretation of its own regulations unless they are plainly erroneous; they are not.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. The petition from writ of habeas corpus (Doc. 1) is **DENIED**;
2. No certification of appealability is required.

IT IS SO ORDERED.

Dated:   **May 28, 2015**                             **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE